### YASUDA FIRE & MARINE INSURANCE COMPANY OF EUROPE LTD., Plaintiff,

v.

### CONTINENTAL CASUALTY COMPANY, Defendant.

No. 93 C 7695.

United States District Court,
N.D. Illinois, E.D.

Dec. 27, 1993.

Joseph T. McCullough, Chicago, IL, for plaintiff.

Mound, Cotton & Wollan, New York City, for defendant.

### *MEMORANDUM OPINION AND ORDER*

SHADUR, Senior District Judge.

Yasuda Fire & Marine Insurance Company of Europe Ltd. ("Yasuda") has filed against Continental Casualty Company ("CNA") what Yasuda characterizes as its "Petition To Vacate Arbitration Awards" ("Petition"), accompanied by a supporting Memorandum of Law. Yasuda seeks to invoke federal jurisdiction under Federal Arbitration Act ("Act") § 10(a), 9 U.S.C. § 10(a).[1]

---

1. Further citations to the Act will take the form   "Act § —," referring to the Title 9 numbering.

This sua sponte memorandum opinion and order is occasioned not only by this Court's obligation to inquire into subject matter jurisdiction at the outset,[2] coupled in this case with the patently problematic nature of Yasuda's submissions, but also by Yasuda's stated need for prompt resolution so that the pending arbitration between Yasuda and CNA can go forward.

■ Act § 10(a) confers District Court jurisdiction, in diversity of citizenship cases, to vacate—under limited circumstances—the "awards" that have been made by arbitrators contractually designated by the disputants.[3] That designation of course accounts for Yasuda's having to label the arbitrators' actions that it now challenges as "awards," even though those actions are purely preliminary procedural rulings that have been announced by the arbitrators at an organizational meeting with counsel for Yasuda and CNA *before* the arbitration has actually begun (something that has not taken place even now):

1. a requirement that Yasuda post a Letter of Credit ("LOC") for something over $2.5 million (that represents the amount in dispute between the parties) before the arbitrators proceed with the underlying reinsurance controversy; and

2. a prohibition against Yasuda's sharing information obtained during the course of arbitration with any of its co-reinsurers—companies that were also participants in the same reinsurance agreements and that are currently involved in other arbitrations with CNA.

■ To begin with the easier issue first— the second ruling, spoken of in Petition ¶ 9 as a "gag order"—only a scene from the theater of the absurd would portray such a wholly procedural and largely (though not entirely) discovery-oriented ruling as an "award" by the arbitrators. Even the most extraordinary distortion of the few precedent-creating cases that Yasuda's Mem. 5 has cited for the proposition that arbitrators' interim decisions can sometimes qualify as "awards" ripe for judicial review (*Pacific Reins. Management Corp. v. Ohio Reins. Corp.*, 935 F.2d 1019, 1023 (9th Cir.1991); *Island Creek Coal Sales Co. v. Gainesville*, 729 F.2d 1046, 1049 (6th Cir.1984); *Sperry Int'l Trade, Inc. v. Government of Israel*, 689 F.2d 301, 304 (2d Cir.1982)) cannot elevate such a portion of the procedural ground rules for pre-hearing discovery and for the hearing itself to the level of an "award."

■ It should be added parenthetically that even if the challenged decision *were* somehow to be stretched into a judicially reviewable status, Yasuda would lose on the outset in terms of its complaint (Mem. 6) that "the gag order by the panel will unfairly inhibit the discovery of relevant facts." For one thing, no *right* of discovery exists in arbitration to begin with.[4] And for another, each of the reinsurance agreements in issue specifically provides (Petition Exs. A and C Art. 21, Exs. B and D Art. 22):

> The rules and procedures for pre-hearing investigations shall be established by the board of arbitrators.

It is arrant nonsense to suggest that the now-challenged decision—part of those "rules and procedures"—did not "draw its essence

---

2. This Court always undertakes an immediate review of newly-filed complaints; see *Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir.1986):

> The first thing a federal judge should do when a complaint is filed is check to see that federal jurisdiction is properly alleged.

3. As with federal jurisdiction to confirm arbitration awards under Act § 9, the Act itself is not a source of subject matter jurisdiction—some independent basis of federal jurisdiction must exist (see, e.g., *Harry Hoffman Printing, Inc. v. Graphic Communications Int'l Union Local 261*, 912 F.2d 608, 611 & n. 1 (2d Cir.1990) and cases cited there). In this instance there is no question on that score. Petition ¶ 2 identifies Yasuda as an English corporation with its principal place of business in London, while Petition ¶ 3 alleges that CNA is an Illinois corporation with its principal place of business here in Chicago. Far more than $50,000 is in controversy. Those matters combine to qualify for federal jurisdiction under 28 U.S.C. § 1332(a)(2).

4. Indeed, one of the advantages claimed by proponents of arbitration over lawsuits as a vehicle for dispute resolution is that arbitration is *not* subject to the burdens (and to the time and expense) of the discovery process that has given rise to so much criticism of litigation in the court system from so many quarters (see, e.g., Walter Olson, *The Litigation Explosion* 223–31 (1991)).

from the contract" under which arbitration takes place (*United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987), reconfirming the principle announced in the seminal decision in *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960), one part of the *Steelworkers Trilogy* in which this Court's then law firm, and notably its then partners Arthur Goldberg, David Feller and Elliot Bredhoff, played a leading role).

But that merits-related comment is really unnecessary to the current decision. Because this Court clearly lacks subject matter jurisdiction over the complained-of ruling that bars Yasuda's sharing of information with its co-reinsurers, that facet of the Petition must be dismissed.

To return to the first part of the Petition, its challenge to the LOC requirement, that calls for a bit more extended treatment. In that respect Yasuda cites and appends one District Court decision, *Recyclers Ins. Group, Ltd. v. Insurance Co. of N. Am.*, Misc. No. 91–503, 1992 WL 150662 (E.D.Pa. June 15, 1992), that both (1) held that a like requirement imposed by an arbitration panel *was* an interim "award" subject to current judicial review under the Act and (2) vacated that "award" in reliance on *Swift Indus., Inc. v. Botany Indus., Inc.*, 466 F.2d 1125, 1133 (3d Cir.1972). As our Court of Appeals has taken the occasion to remind all of us from time to time, District Courts' decisions do not make precedent even in their home territory, let alone on foreign soil. This Court is accordingly free to examine the issue independently.[5]

Again as a preliminary sidelight, Yasuda's submission on this subject is really incomplete. It attaches a few pages from the transcript of the November 30, 1993 organizational conference (Petition Ex. I, Tr. 104–08) to show the 2–1 ruling of the arbitrators that has imposed the requirement that Yasuda post the LOC, with CNA having no right whatever to draw against it except with the arbitration panel's approval—a clear *security* measure, not at all an award on the merits of the Yasuda–CNA dispute. That excerpt then reflects the active involvement of Yasuda's counsel in discussing the terms and conditions and amount of the LOC. For aught that appears from the limited excerpt, Yasuda's now-advanced objection to the establishment of *any* LOC might thus well be one that it cannot raise on grounds of waiver or a like procedural bar. But for the present this Court will assume that earlier portions of the record not furnished by Yasuda would show its preservation of its right to object to the requirement.

But that aside, it is not entirely clear from what Yasuda has submitted that the LOC requirement qualifies as a judicially reviewable "award" for purposes of the Act. As already stated, Yasuda has cited three Court of Appeals decisions for the proposition that interim determinations by arbitrators, made well ahead of their decisions on the merits of the dispute submitted to them, may be reviewable as "awards" within the meaning of Act § 10(a). Each of those three cases dealt with arbitrators' rulings that altered the substantive positions of the disputants, in a way that the mere posting of the LOC here (with no power on CNA's part to draw on it) does not.

It *is* however true that *Pacific Reins,* did characterize as an "award" the requirement that an escrow be established pending the arbitrators' decision as to the validity of the agreements at issue in that case (935 F.2d at 1022), although it did so in the context of a dispute as to whether the claims in controversy were arbitrable at all (*id.* at 1024).

---

**5.** It should be added, however, that nothing in *Swift Indus.*—a thoughtful opinion by then District Judge Edward Becker, sitting by designation with the Court of Appeals on which he now serves permanently with such great distinction—calls for a conclusion different from the one hereafter announced in this opinion. That case involved an appeal from a final award in arbitration, in which the arbitrator had granted as part of the relief the award of a $6 million cash bond to cover the contingency of potential future liabilities, even though the arbitration agreement appeared to preclude such a security requirement as to "liability which has not only not yet been 'incurred or suffered,' but which may or may not ever accrue" (*id.*). As the later discussion in the text demonstrates, that is totally different from the present case—not only in terms of subject matter jurisdiction, but more importantly in terms of the merits.

Even though that latter aspect is not present in this case, a fair reading of *Pacific Reins.*— if it were to be followed in this Circuit— would vest jurisdiction for judicial review in this Court.[6]

But having potentially talked itself into court in jurisdictional terms on the strength of *Pacific Reins.*, Yasuda has just as promptly disqualified itself for substantive relief under the force of that same decision. It is striking that even after it painted the term "award" with a broad brush, *Pacific Reins.* found no difficulty at all in holding that the escrow requirement in that case "drew its essence" from the agreement under arbitration—even though that agreement said not a word about the imposition of such a requirement. Instead the Ninth Circuit plainly viewed the arbitrators' power to decide the underlying case as necessarily subsuming their power to set the interim requirement that the arbitrators found necessary and appropriate to render their decision meaningful.

To pursue that line of merits-oriented analysis in terms of the present case, here the arbitrators' imposition of the LOC requirement does not even inferentially signal any preconception of the parties' relative strengths on the merits. Nor does it represent "one of the ultimate issues to be decided by the arbitrators" only after a hearing, as in *Recyclers*. Nor does Yasuda contend (as did the complaining plaintiff in *Recyclers*) that the requirement was one that the arbitrators knew was beyond the capacity of that plaintiff, so that the imposition of the requirement itself would effectively terminate the arbitration and would thus amount to a *final* award (which would be reviewable by definition). Indeed, Yasuda really says just the opposite—its Mem. 1–2 emphasizes its financial soundness:

> Yasuda is a financially viable company with a total of 103 million pounds in assets, and a net worth of 7 million pounds (approximately $11 million at the current rate of exchange). See Financial Statement, attached hereto as Exhibit 1. Yasuda is a subsidiary of one of the largest insurance companies in Japan, Yasuda Fire & Marine Insurance Company. Yasuda has no financial difficulties which would prevent it from paying any legitimate reinsurance claims the arbitration panel may order it to pay after a hearing on the merits.[7]

Thus all that the Petition presents on its face in terms of the first caviled-at arbitrators' ruling is a threshold decision that implies no ruling at all on the merits, but serves only as a purely anticipatory requirement in aid of the arbitrators' own jurisdiction.[8]

---

6. *Pacific Reins.*, *id.* at 1023 (citation omitted) reached its conclusion in two steps:
   1. Because such an interim equitable order had obvious potential importance "in making the arbitration proceedings meaningful, court *enforcement of them, when appropriate,* is not an 'undue intrusion upon the arbitral process,' but is essential to preserve the integrity of that process." That would render such orders reviewable for purposes of confirmation and enforcement under Act § 9.
   2. Because such an order would thus be an "award" subject to confirmation review under Act § 9, by a parity of reasoning it would also be subject to review for possible vacation under Act § 10(a).

7. [Footnote by this Court] There may be a bit more here than meets the eye. Yasuda's Petition Ex. 1 is just page 6 of its Financial Statements, a single page Summary Balance Sheet at December 31, 1992. From the three lines shown under Capital and Reserves in that one-page skeletal excerpt, Yasuda appears to have sustained £9.8 million in losses in 1992 (nearly $12 million at current exchange rates), so that even with what appears to have been a £9 million infusion of capital (from its Japanese parent company?) its net worth still dropped by £800,000 (some $1.2 million) during that year. We are now a full year later—who knows what the interim period has generated in terms of Yasuda's current financial position? Thus Yasuda's own presentation suggests what might be a likely reason for the arbitrators' requirement of Yasuda's up-front posting of an LOC.

8. Again it will be recalled that the arbitrators' determination was one of several that were reached at their organizational meeting with the parties' counsel, convened to establish the ground rules for the conduct of the arbitration. It is somewhat indicative of the climate in which even that threshold activity took place that the parties threatened to do battle over where the organizational meeting should be held—in New York as it was, or in Chicago at the Sidley & Austin conference facilities ("well suited for this purpose" and "serv[ing] delicious cookies and other desserts" according to Yasuda's lawyers, Petition Ex. G). Shades of the Paris peace conference that, before it ultimately ended the Vietnam War, had such protracted preliminary skirmishing over the shape of the conference table!

CNA gains nothing from the requirement, for it can have no access to any LOC proceeds unless and until the arbitrators rule on the merits—that is, until they issue their *actual* substantive award. And Yasuda's emphasis on its own lack of financial difficulties negates any prospect that its need to post the LOC pending the arbitrators' ultimate decision (and *not* as a permanent matter) is the functional equivalent of a final award adverse to Yasuda in substantive terms.

It may be assumed arguendo for present purposes that our Court of Appeals—which has not spoken to the issue—would adopt the expansive view of "award" taken in *Pacific Reins.*, thus vesting Act § 10(a) jurisdiction in this District Court over the arbitrators' LOC requirement. In that respect the only subpart of the review statute that could arguably apply is a portion of Act § 10(a)(4): "[w]here the arbitrators exceeded their powers." Our Court of Appeals has regularly reiterated the extremely limited scope of review afforded by that provision (see, e.g., *Carptenter Local No. 1027 v. Lee Lumber & Bldg. Material Corp.*, 2 F.3d 796, 797 (7th Cir.1993); *National Wrecking Co. v. International Bhd. of Teamsters*, 990 F.2d 957, 961 (7th Cir.1993)). And in this instance it must be concluded that the LOC requirement, carefully fashioned as it is in aid of the arbitrators' ability to provide meaningful relief, and totally lacking any prejudgment of the merits or any inhibition of the parties' ability to do battle on the merits, indeed "draws its essence from the [reinsurance] agreement[s]" (*Carpenter Local No. 1027*, 2 F.3d at 797 and *National Wrecking*, 990 F.2d at 960, each quoting from the *Enterprise Wheel* portion of the *Steelworkers Trilogy*).

### Conclusion

One of Yasuda's complaints about the preliminary procedural rulings by the arbitrators to whom it has agreed to refer its substantive disputes with CNA (the ruling as to the nonsharing of information) is plainly not an "award" such as to trigger judicial reviewability under Act § 10(a). This Court therefore lacks subject matter jurisdiction over that aspect of Yasuda's Petition, and it is dismissed for want of such jurisdiction.

As for the other complaint now made by Yasuda (that disputing the requirement that it post an LOC), it is assumed here arguendo that the arbitrators' ruling may be reviewed under Act § 10(a)(4) as though it were an "award" within the scope of that statute. But on that assumption, that portion of Yasuda's Petition clearly appears to call for an adverse judgment on the face of its pleading even though the case is not yet at issue. Counsel for both parties are directed to appear in open court at 9:30 a.m. December 30, 1993 to discuss whether any reason exists for the nonentry of an order of dismissal on that ground.