37 F.3d 345
 The YASUDA FIRE & MARINE INSURANCE COMPANY OF EUROPE, LTD.,
Plaintiff-Appellant,
v.
CONTINENTAL CASUALTY COMPANY, a CNA Group Company,
Defendant-Appellee.
CONTINENTAL CASUALTY COMPANY, a CNA Group Company, Plaintiff-Appellee,
v.
The YASUDA FIRE & MARINE INSURANCE COMPANY OF EUROPE, LTD.,
Defendant-Appellant.
 Nos. 94-1197, 94-1986.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 9, 1994.
Decided Oct. 7, 1994.
 
 Susan A. Stone, Joseph T. McCullough, IV (argued), Jordan Schau, Sidley & Austin, Chicago, IL, for Yasuda Fire & Marine Ins. Co. of Europe, Ltd.
 Michael H. Goldstein (argued), Lisa S. Post, Mound, Cotton & Wollan, New York City, Kenneth L. Cunniff, Chicago, IL, for Continental Cas. Co. and CNA Ins. Group.
 Before MANION and KANNE, Circuit Judges, and SHABAZ, District Judge.*
 KANNE, Circuit Judge.
 
 
 1
 Yasuda Fire & Marine Insurance Company of Europe, Limited ("Yasuda") brought this case to vacate an interim arbitration award in favor of Continental Casualty Company, a CNA Group Company ("CNA"). Yasuda argued to the district court that the arbitration panel charged with resolving Yasuda's dispute with CNA did not have authority to order Yasuda to post an interim letter of credit, that the letter of credit was excessive, and that the arbitration panel did not give Yasuda a fair hearing. The district court sua sponte denied Yasuda's Petition to Vacate Arbitration Awards ("Petition to Vacate"). In its memorandum opinion and order, the district court ruled that the arbitration panel had the power to order Yasuda to post an interim letter of credit in the amount of $2,549,660 and that the panel had afforded Yasuda a fair hearing. Yasuda Fire & Marine Ins. Co. v. Continental Casualty Co., 840 F.Supp. 578 (N.D.Ill.1993). Yasuda appeals, challenging the district court's holdings with regard to three issues: (1) Whether Yasuda's reinsurance agreement with CNA provided the arbitrators with the power to order Yasuda to post a Letter of Credit as interim security pending arbitration; (2) whether the reinsurance agreement permitted the amount of security which the arbitrators ordered; and (3) whether the arbitrators afforded Yasuda due process in determining the proper amount of the security.
 
 
 2
 In addition to the issues Yasuda raises, this Court considers whether an award of interim security pending arbitration constitutes an "award" within the meaning of 9 U.S.C. Sec. 10(a)(4) and whether a district court's refusal to vacate an interim security award is a final decision appealable under 9 U.S.C. Sec. 16(a)(3). Section 10(a)(4) confers jurisdiction on the district court to vacate arbitration awards in limited circumstances. If interim security does not constitute an award within this statute, the district court had no jurisdiction to hear this case.[1] Section 16(a)(3) confers jurisdiction upon this court to hear appeals from final decisions of the district court relating to arbitration conducted under the Federal Arbitration Act. If the district court's disposition of Yasuda's Petition to Vacate does not constitute a final decision, we do not have jurisdiction to hear this case.
 
 Background
 
 3
 Yasuda and CNA entered into four reinsurance agreements in the early 1980's. Yasuda is the reinsurer, CNA the reinsured. These agreements contain nearly identical provisions requiring the parties to submit disputes arising under them to a three-person arbitration panel.[2] They also contain provisions requiring Yasuda to post letters of credit upon CNA's request (e.g., First Excess of Loss Reinsurance Agreement, Article 15, Appendix to Brief of Appellants, at A40).[3]
 
 
 4
 On April 3, 1992, CNA served a demand for arbitration on Yasuda to resolve CNA's contention that Yasuda had failed to pay CNA its share of losses arising under policies properly ceded to the reinsurance agreements. On June 2, 1992, Yasuda served a cross-demand for arbitration on CNA. On November 30, 1993, the parties met for a preliminary hearing with the arbitration panel. At this hearing the arbitration panel considered CNA's claim for preliminary security in the amount of $2,549,660 against a possible future arbitration award. The arbitration panel awarded CNA's request for preliminary relief by ordering Yasuda to post an interim letter of credit in the amount of $2,549,660. Yasuda now appeals this order of the arbitration panel.
 
 Analysis
 I. Jurisdictional Issues
 
 5
 Before proceeding to the issues which Yasuda raises, we find it necessary to resolve two jurisdictional problems. The court has a duty to resolve apparent jurisdictional questions even where the parties do not raise them. Fed.R.Civ.P. 12(h)(3); see United Steelworkers v. Libby, McNeil & Libby, 895 F.2d 421 (7th Cir.1990) (stating that "Every federal appellate court has a special obligation to satisfy itself of the jurisdiction of the lower federal courts in a case under review." (citations omitted)).
 
 
 6
 a. "Award" Under 9 U.S.C. Sec. 10
 
 
 7
 First, we must consider whether an interim order of security (such as a letter of credit) constitutes an "award" subject to 9 U.S.C. Sec. 10, which provides:
 
 
 8
 (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration--
 
 
 9
 * * * * * *
 
 
 10
 (4) Where the arbitrators exceeded their powers;
 
 
 11
 9 U.S.C. Sec. 10(a)(4). Yasuda claims that the arbitration panel exceeded its powers when it ordered Yasuda to post an interim letter of credit. If the panel's order does not constitute a statutory award, Yasuda has failed to present a claim which the federal courts can adjudicate.
 
 
 12
 Other circuits have recognized that interim relief pending final arbitration can be subject to district court confirmation.[4] For example, the Sixth Circuit held that an interim arbitration award that required the defendant-city to continue performance of a coal purchase contract until the arbitration panel issued its final award was subject to confirmation. Island Creek Coal Sales Co. v. City of Gainesville, Florida, 729 F.2d 1046, 1049 (6th Cir.1984) (reasoning that the interim award disposed of a "separate, discrete, independent, severable issue": whether the city had to perform the contract during the pendency of the arbitration proceedings), cert. denied, 474 U.S. 948, 106 S.Ct. 346, 88 L.Ed.2d 293 (1985). The Second Circuit, though not addressing the issue, noted the district court's rejection of the argument that an arbitration panel's resolution of an interim dispute over a letter of credit was not ripe for confirmation. Sperry Int'l Trade v. Israel, 689 F.2d 301, 304 n. 3 (2d Cir.1982) (relating district court's conclusion that an interim award "was a final decision as to the severable issues regarding the letter of credit" in light of award's own stipulation that either party could seek confirmation).
 
 
 13
 The Ninth Circuit upheld the power of a district court to review an Interim Final Order (IFO) establishing an escrow account with the money a plaintiff claimed to be due under its contract with the defendant. Pacific Reinsurance v. Ohio Reinsurance, 935 F.2d 1019, 1023 (9th Cir.1991). The Pacific Reinsurance court reasoned that "[g]iven the potential importance of temporary equitable awards in making the arbitration proceedings meaningful, court enforcement of them, when appropriate, is ... essential to preserve the integrity of ... [the arbitration] process." Id. More precisely, the court held that "temporary equitable orders calculated to preserve assets or performance needed to make a potential final award more meaningful ... are final orders that can be reviewed for confirmation and enforcement by district courts under the FAA." Id. (citation omitted).
 
 
 14
 We find the Ninth Circuit's reasoning and conclusion persuasive. The arbitration panel in this case ordered Yasuda to post an interim letter of credit in order to protect a possible final award in favor of CNA. The panel concluded that if it did not order interim relief CNA would have to bear the risk that any final award it might win would be meaningless. Because this relief protects CNA's interests, CNA has the right to confirm the order in district court, which it has done.[5] Analogously, Yasuda should have the right to attack this relief if it believes that the panel exceeded its powers in granting the relief. The interim relief represents a "temporary equitable order[ ] calculated to preserve assets ... needed to make a potential final award more meaningful." Id. Accordingly, we find that the interim letter of credit constitutes an "award" under section 10 and that the district court had jurisdiction to consider Yasuda's Petition to Vacate.
 
 
 15
 b. "Final Order" Under 9 U.S.C. Sec. 16
 
 
 16
 Second, we must consider whether the district court has issued a final order over which this court has appellate jurisdiction. Generally, only a final decision of the district court is appealable to a court of appeals. 28 U.S.C. Sec. 1291; Shearson Loeb Rhoades Inc. v. Much, 754 F.2d 773, 775 (7th Cir.1985). The statute at issue here, 9 U.S.C. Sec. 16(a)(3), does not define the term "final decision" beyond the interpretation courts have understood under 28 U.S.C. Sec. 1291. Perera v. Siegel Trading Co., Inc., 951 F.2d 780, 783 (7th Cir.1992). Accordingly, this Court has assumed that Congress intended the term "final decision" in section 16 to retain its meaning under section 1291. Id. Thus, if dismissing a petition to vacate an interim order of security does not constitute such a final decision, we do not have jurisdiction to review the district court's disposition.
 
 
 17
 We have held that, where a district court vacates a damages award and remands it to the arbitrator for recalculation, we do not have jurisdiction under section 1291. Shearson Loeb Rhoades, 754 F.2d at 778. We noted in dicta, however, that "[t]his court would clearly have jurisdiction under section 1291 if the district court had confirmed the arbitrator's entire award or had partially vacated the award and enforced the remainder without remanding." Id. at 775 (citations omitted). The district court was required to resolve completely the pending action before the appellate court could have jurisdiction. We have also concluded similarly where a district court had confirmed an arbitration award but had not entered a Rule 54(b) judgment pending the outcome of other claims joined in the same action. Middleby Corp. v. Hussmann Corp., 962 F.2d 614 (7th Cir.1992) (citing Perera, 951 F.2d at 786, for the proposition that Rule 54(b) "may not be used to separate for immediate appeal an arbitration question embedded in a larger dispute").
 
 
 18
 As we discussed above, the arbitration panel's order compelling Yasuda to post a letter of credit as interim security pending arbitration is an award subject to both confirmation and vacation under the FAA. And the district court did enter a final judgment regarding Yasuda's Petition to Vacate, dismissing it sua sponte. Yasuda Fire & Marine Ins. Co. v. Continental Casualty Co., 840 F.Supp. 578 (N.D.Ill.1993).[6]
 
 
 19
 Furthermore, even though the arbitration panel has yet to resolve nearly all of the disputes between Yasuda and CNA, any future findings of the arbitrators will not influence the issues before us. Once we decide whether the arbitrators were within their powers in ordering an interim letter of credit, that issue is resolved. If, after the arbitration is completely finished, either Yasuda or CNA objects to the arbitration process or result, those concerns may be the subjects of other actions in the district court. Any awards the arbitrators grant after hearing the merits of the case will not make the interim award any more final. They will be final awards with respect to separate claims.
 
 
 20
 Because the power of the arbitration panel to award this interim security was the only issue before the district court in Yasuda's Petition to Vacate, and because the district court ruled on all issues which Yasuda raised in its Petition, we find that we have jurisdiction to review the district court's disposition of the merits.
 
 II. The Merits of Yasuda's Appeal
 
 21
 Yasuda argues first that the district court erred in refusing to vacate the arbitration panel's award of interim relief to CNA in the form of Yasuda's letter of credit for $2,549,660. It contends that, in ordering this letter of credit, the arbitrators exceeded their authority under the Yasuda-CNA reinsurance agreement and that this court should therefore vacate the award under 9 U.S.C. Sec. 10(a)(4).[7]
 
 
 22
 Judicial review of an arbitration panel's award is extremely limited. Carpenter Local 1027 v. Lee Lumber & Bldg. Material, 2 F.3d 796 (7th Cir.1993). Pursuant to our policy of preventing litigation of the arbitration process, a court may vacate an arbitration award only if the arbitration panel's decision to grant the award does not draw its essence from the agreement between the parties. See id. at 797, 798. And as we have written,
 
 
 23
 [S]o long as the award is based on the arbitrator's interpretation--unsound though it may be--of the contract, it draws its essence from the contract.... It is only when the arbitrator must have based his award on some body of thought, or feeling, or policy, or law that is outside the contract ... that the award can be said not 'to draw its essence from the collective bargaining agreement.'
 
 
 24
 Ethyl Corp. v. United Steelworkers, 768 F.2d 180, 184 (7th Cir.1985) (citations omitted) (quoting Young Radiator Co. v. International Union, U.A.W., 734 F.2d 321, 325 (7th Cir.1984)), cert. denied, 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 300 (1986). The roots of these principles lie in United Steel Workers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), which states (in the context of a labor arbitration case):When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency. Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.
 
 
 25
 Id. 363 U.S. at 597-98, 80 S.Ct. at 1361.
 
 
 26
 Yasuda and CNA agreed to an arbitration clause that does not explicitly authorize the arbitrator to order either party to post a letter of credit as security against a possible final award. See First Excess of Loss Reinsurance Agreement, Article 15, Appendix to Brief of Appellants, at A43. However, the arbitration clause does not mention any other type of award, such as damages or specific performance, either.[8] The agreement merely says that "any dispute arising out of this agreement shall be submitted to the decision of a board of arbitration." Id. In Article 15 of the reinsurance agreement, entitled "Loss Reserves," the parties separately provide that Yasuda will provide CNA a letter of credit upon CNA's request. Id. at A40. This clause demonstrates that the parties agreed upon the usefulness of letters of credit as the means of securing their respective rights and obligations and as a means of facilitating the transaction generally.
 
 
 27
 Yasuda directs us to a line of authority from the Third Circuit to suggest that the arbitration panel may not read the separate arbitration and letter of credit clauses together. It cites Recyclers Ins. Group Ltd. v. Insurance Co. of North Amer., 1992 WL 150662 (E.D.Pa. June 15, 1992), which arguably rejects the very notion that an arbitrator could rely jointly on separate letter of credit and arbitration provisions in a reinsurance agreement to justify ordering an interim letter of credit pending final arbitration. The Recyclers court relied on Swift Indus., Inc. v. Botany Indus., Inc., 466 F.2d 1125 (3rd Cir.1972), for the caveat that "to award, as an adjunct to declaratory relief, a form of prejudgment execution which the Agreement by its lack of reference to security seems to exclude rather than to intend, is to eclipse the framework of the agreement and to venture onto unprotected ground." Id. at 1133. The Recyclers court assumed (apparently without deciding) that the Swift decision did not preclude the arbitrators from considering the entire agreement (as opposed to the arbitration clause only) for the authority to make an award. Recyclers, 1992 WL 150662 at 4. Yet it found that the arbitration panel's award was not rationally derived from the contract because it amounted to a premature award of one of the ultimate issues before the arbitration panel. Id. In other words, it was not rational for the arbitration panel in Recyclers to conclude that the essence of the contract authorized them to award interim security pending final arbitration when the ultimate issue facing the panel was whether one party should have to post that same security at all. Id.
 
 
 28
 The Swift case, however, did not involve a contract which provided for arbitration in one section and prejudgment security in another section; rather, it involved a contract which did not contemplate prejudgment security in any context. Swift, 466 F.2d at 1125. Awarding prejudgment security despite its complete absence from the contract, the Swift court reasoned, went beyond exercising a wide range of remedies and expanded into fashioning a remedy which the contract excluded. Whether we would have interpreted the agreement at issue in Swift as excluding the remedy involved, we cannot say. However, we do agree with the general proposition that the arbitration panel would exceed its authority if it provided an award which the agreement explicitly excluded as an option.
 
 
 29
 Such is not the case with the agreement between Yasuda and CNA, however. While no provision of the agreement explicitly provides that the arbitrator may require Yasuda to post a letter of credit as interim relief pending final arbitration, no article of the agreement precludes that sort of remedy. In fact, as mentioned above, Yasuda and CNA contemplated that letters of credit were appropriate instruments of security in this transaction. The arbitration panel has acted merely to preserve CNA's stake in the controversy. If the panel were not to order the letter of credit, and Yasuda were to exhaust its reserves, the impact of the arbitration, indeed the meaning of the entire agreement between CNA and Yasuda, would be in serious doubt. To this extent the arbitration panel acted consistently with the agreement in an even broader sense: to protect the bargain giving rise to the dispute.
 
 
 30
 Furthermore, we would be remiss if we did not emphasize how important a wide range of remedies is to successful arbitration. Although parties to arbitration agreements may not always articulate specific remedies, that does not mean remedies are not available. If an enumeration of remedies were necessary, in many cases "the arbitrator would be powerless to impose any remedy, and that would not be correct. Since the arbitrator 'derives all his powers from the agreement, the agreement must implicitly grant him remedial powers when there is no explicit grant.' " Carpenter Local 1027, 2 F.3d at 798 (7th Cir.1993) (quoting Miller Brewing Co. v. Brewery Workers Local No. 9, 739 F.2d 1159, 1163 (7th Cir.1984)), cert. denied, 469 U.S. 1160, 105 S.Ct. 912, 83 L.Ed.2d 926 (1985).
 
 
 31
 The transcript of the preliminary hearing demonstrates that the arbitrators engaged in the task of interpreting the agreement when they considered whether to order Yasuda to post the letter of credit. The panel solicited from the parties their arguments regarding whether the letter of credit section applied once the parties were in arbitration. See Transcript, In the Matter of the Arbitration Between: Continental Casualty Co. against The Yasuda Fire & Marine Ins. Co. of Europe, Ltd. as appended to Respondent's Memorandum of Law in Opposition to Petition and Motion to Confirm Award, Continental Casualty Co. v. Yasuda Fire & Marine Ins. Co. of Europe, Ltd., 94 C 1349 (N.D.Ill. Filed March 24, 1994), [Transcript of Arbitration Proceedings ] at 84. Although the panel did not articulate the precise basis for its decision to order Yasuda to post a letter of credit, the issues it raises in the proceedings suggest that it interpreted the contract as giving it that authority. There is no evidence to suggest that the panel "must have based [its] award on some body of thought, or feeling, or policy, or law that is outside the contract." Ethyl Corp., 768 F.2d at 184. And the reinsurance agreement nowhere prohibits this relief.
 
 
 32
 Therefore, we hold that the arbitration panel's order requiring Yasuda to post a letter of credit as interim security pending final arbitration derives its authority from the essence of the contract and is not in excess of the arbitration panel's authority.
 
 
 33
 Yasuda next argues that, even supposing the agreement's letter of credit clause afforded the arbitration panel the right to grant a letter of credit as interim relief, the amount of the letter of credit that the arbitration panel awarded, $2,549,660, vastly exceeds the amount which the clause permits. The letter of credit amount includes Yasuda's share of loss reserves, unearned premium reserves, and paid losses. Yasuda contends, however, that the letter of credit clause only allows for letters of credit in the amount of Yasuda's share of loss reserves and unearned premium reserves, but not paid losses, or in this case $2,064. Again, this court can reverse the arbitration panel only if the basis for the arbitration panel's decision to grant the award does not draw its essence from the agreement between the parties.
 
 
 34
 The amounts composing each of the various reserves and losses are questions tied up in the ultimate outcome of the arbitration. CNA stated in its brief that "if Yasuda had performed [the reserve funding requirements of the Agreements] CNA would now have the security against paid losses that were previously outstanding reserves." Brief of Respondents-Appellees, at 12. The arbitration panel agreed to order the letter of credit in the amount CNA carried on its books, that is, the amount CNA contends is collectible from Yasuda. When Yasuda argued for a more involved debate over calculating the amount of the letter of credit, the panel squelched the issue, asking rhetorically, "Aren't we right back to trying to litigate what's a fair claim and whether it's covered, and so on and so forth? ... We're getting into the merits of the case." Transcript of Arbitration Proceedings, at 106. The arbitration panel concluded that Yasuda was trying to press ahead with arbitration of the ultimate issue before both parties were prepared to do so. CNA's argument regarding loss reserves as security against paid losses supports the conclusion that the issue of what money belongs to what category of reserves or losses is for ultimate arbitration. The arbitration panel implicitly concluded that it would be proper under the agreement to decide this question after a later hearing and that in the meantime ordering Yasuda to post a letter of credit in the amount CNA requested was consistent with the parties' allotments of security under the letter of credit provisions. This court will not question the arbitration panel's interpretation of the agreement.
 
 
 35
 The issue of the proper amount of the letter of credit is closely tied to the final issue Yasuda raises in this appeal: whether the Arbitrators erred in determining the amount of the security without allowing Yasuda another opportunity to argue and present evidence regarding the amount of security to be posted. The arbitration panel decided to order Yasuda to post a letter of credit at a preliminary organizational hearing. Yasuda did request at that hearing, after learning of the panel's decision to order the letter of credit, an opportunity to be heard further on the proper amount of the letter of credit. The arbitration panel rejected this request because, as we noted above, they feared that such debate would prematurely delve into the merits of the case.
 
 
 36
 The arbitration clause states that the panel "shall issue its decision ... based upon a hearing at which evidence may be introduced without following strict rules of evidence but in which cross examination and rebuttal shall be allowed." Yasuda argues that this language creates for it a right to an evidentiary hearing before the panel issues any relief, including interim relief.
 
 
 37
 To begin with, we must acknowledge that the parties had some opportunity to present their evidence and arguments to the arbitration panel at the preliminary hearing. The arbitrators received written submissions and heard oral arguments before announcing their decision awarding interim relief. Therefore, Yasuda did have some opportunity to present its evidence and arguments regarding the letter of credit. It is true, however, that the panel specifically suppressed further argument and presentation of evidence regarding the proper amount of the letter of credit. Yet we are not persuaded that the panel's rejection of Yasuda's argument amounts to exceeding their powers.
 
 
 38
 Suppressing debate over the amount of the letter of credit is temporary to the extent that the arbitration panel will visit that same issue during arbitration of the ultimate dispute between the parties (the amount of money, if any, Yasuda owes CNA). The panel predicated its decision not to allow further argument as to the amount of the letter of credit on this very point. That is, it did not want to hear evidence on the ultimate issue prematurely. By delaying the presentation of evidence on this issue, the panel hoped to allow each party to conduct discovery and present its best prepared argument rather than a premature outline of its claims. There is no evidence demonstrating that the panel relied upon some source of authority other than the agreement in proceeding as it did. The panel acted within the essence of the agreement, making certain that the arbitration process would resolve the dispute the way the parties intended.[9]
 
 
 39
 Courts have required arbitration panels, regardless of whether they have followed an agreement's procedural stipulations, to afford the parties a fundamentally fair hearing prior to awarding relief. Bell Aerospace Co. Div. of Textron v. Local 516, Int'l. Union Etc., 500 F.2d 921, 923 (2nd Cir.1974). That does not mean, however, that the parties before an arbitration panel are entitled to all of the process that accompanies a judicial proceeding. We believe that the arbitration panel in this case has met the fundamental fairness standard. Each party had notice of the preliminary hearing, had the opportunity to submit written arguments and exhibits, and had an opportunity to be heard. That the arbitration panel refused to hear detailed arguments regarding the amount of the letter of credit does not frustrate the organizational meeting's fairness; on the contrary, the arbitration panel's insistence that the parties argue essentially the same issue only after discovery, when both sides will be more thoroughly prepared, likely has enhanced the fullness and fairness of the ultimate arbitration.
 
 
 40
 Accordingly, we find that the arbitration panel set the amount of the letter of credit based on its interpretation of the agreement between Yasuda and CNA after a hearing that it deemed sufficient based on the requirements of said agreement. For the foregoing reasons the district court's dismissal of Yasuda's Petition to Vacate and grant of CNA's Motion to Confirm are AFFIRMED. As there is no basis for CNA's claim for costs against Yasuda, CNA's claim is DENIED.
 
 
 
 *
 The Honorable John C. Shabaz, District Judge for the Western District of Wisconsin, sitting by designation
 
 
 [1]
 Courts have interpreted the Federal Arbitration Act as only a substantive statute, not a jurisdictional statute. That is, parties must establish some independent basis for federal subject matter jurisdiction before federal courts have jurisdiction to hear their claims under the Arbitration Act. Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765; Harry Hoffman Printing, Inc. v. Graphic Comm. Int'l Union Local 261, 912 F.2d 608, 611, & n. 1 (2d Cir.1990). The parties have established as a basis for federal subject matter jurisdiction diversity of citizenship and an amount in controversy in excess of $50,000 pursuant to 28 U.S.C. Sec. 1332(a)(2). Nevertheless, the arbitration panel's grant of interim relief must still qualify as an award under section 10 of the Arbitration Act for jurisdiction to lie in federal court. If the interim relief does not qualify as an award, Yasuda has no grounds for its Petition to Vacate
 
 
 [2]
 As each of these provisions is nearly identical to the others, we treat them as one and refer to them as the "arbitration clause."
 
 
 [3]
 Each of these provisions is nearly identical to the others and we will treat them as one for purposes of this opinion, referring to them as the "letter of credit provision" or "letter of credit clause."
 
 
 [4]
 Confirmation, that is, under 9 U.S.C. Sec. 9. As mentioned, Yasuda brings its claim under section 10 as a petition to vacate, not section 9. While the two statutes apply to two different procedural postures (the winner of an award may petition to confirm under section 9, and the loser may petition to vacate under section 10), they are the same as a practical matter. The district court must confirm an award unless that award must be vacated under section 10 (or modified or corrected under section 11). See 9 U.S.C. Secs. 9-11. Thus, the district court applies the same test whether reviewing a petition to confirm or a petition to vacate. As it would make little sense to define the term "award" one way in the context of a petition to confirm and another way in a petition to vacate, cases involving petitions to confirm are equally as instructive as cases involving petitions to vacate
 
 
 [5]
 See Continental Casualty Co. v. Yasuda Fire & Marine Ins. Co. of Europe, Ltd., No. 94 C 1349 (N.D.Ill. March 30, 1994), Appeal No. 94-1986, consolidated by order of this court on May 17, 1994 with this case, Appeal No. 94-1197
 
 
 [6]
 While it is true that the district court considered CNA's Petition to Confirm the arbitration panel's interim award after Yasuda filed this appeal, that action was not a part of this lawsuit at the time of the district court's ruling. Yasuda appealed from the district court's confirmation and we consolidated that appeal with this appeal on May 17, 1994
 
 
 [7]
 The statute provides for vacation of arbitrators' awards "[w]here the arbitrators exceeded their powers." 9 U.S.C. Sec. 10(a)(4)
 
 
 [8]
 The arbitration clause does provide, however, that each party will bear the expenses of its own arbitrator, that they shall share jointly the costs of the umpire, and that the board shall allocate the remaining costs
 
 
 [9]
 By this we mean to invoke the principle underlying the interim relief in the first place: that interim relief is necessary to protect any possible final relief. If the arbitrators had to conduct a lengthy hearing on the proper amount of the letter of credit, the letter might lose its desired impact, as Yasuda might exhaust its assets in the meantime. The value to the arbitration process of allowing Yasuda the opportunity to present additional evidence, in the implicit calculation of the arbitration panel, is not equal to the value of ordering Yasuda to post the letter of credit immediately