**REVERSE and RENDER; Opinion Filed November 19, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00781-CV

**ZTE CORPORATION AND ZTE USA, INC., Appellant**
**V.**
**UNIVERSAL TELEPHONE EXCHANGE, INC., Appellee**

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-10-07052**

## MEMORANDUM OPINION

Before Justices Myers, Evans, and Brown
Opinion by Justice Evans

This is an appeal from the trial court's order vacating an arbitration award in favor of ZTE

Corporation and ZTE USA, Inc. (collectively ZTE) on claims brought against them by Universal

Telephone Exchange, Inc. (UTE). In five issues, ZTE generally asserts the trial court erred in

vacating the award and instead should have granted ZTE's motion to confirm. We agree that none

of the grounds raised by UTE support vacation of the arbitration award. Accordingly, we reverse

the trial court's order and render judgment confirming the arbitrator's final award.

### BACKGROUND

This dispute arises out of UTE's efforts to obtain a contract to install and integrate a

comprehensive and modern telecommunications system throughout the country of Liberia after

the country's civil war ended in 2003. The peace agreement ending the war established a

transitional government that, among other things, sought to modernize Liberia's telecommunication services. The full record of the arbitration proceeding is not before us and it was not before the trial court. The following facts are largely from the arbitrator's final award and undisputed facts in appellant's brief.[1]

After the civil war ended, UTE began negotiating with Liberia's national telecommunications company, the Liberian Telecommunications Corporation (LTC), with respect to the project.[2] In furtherance of UTE's efforts, UTE executed a non-disclosure agreement (NDA) with ZTE USA to explore obtaining equipment and financing from ZTE USA and/or its Chinese parent company, ZTE. The NDA contained an arbitration clause providing all disputes arising from or in connection with the agreement "shall be submitted to the American Arbitration Association in accordance with its rules in force at the time of application for arbitration."

Although UTE and LTC initially reached an agreement in principle to proceed as a joint venture, open competitive bids were eventually solicited for the project. Ultimately, UTE's bid was ranked first among the five qualified bids and LTC passed a resolution confirming UTE's winning bid.[3] After conducting its own investigation, however, Liberia's Contracts and Monopolies Commission (CMC)[4] recommended Liberia's president not approve the LTC/UTE contract because, among other things, UTE did not have the financial resources nor the operational capacity to execute the project. The president rejected the contract and UTE then sought relief from the Liberian legislature and the Liberian courts in an effort to obtain the necessary approval

---

[1] In its brief, UTE acknowledges that the background facts and history recounted in the arbitration award is basically correct. Moreover, in civil cases, we accept as true the facts stated in appellant's brief unless another party contradicts them. *See* TEX. R. APP. P. 38.1(g).

[2] According to ZTE, LTC is the main telecommunications service provider in Liberia.

[3] ZTE submitted its own competing bid for the project and was ranked fifth out of the five qualified bidders by the LTC.

[4] This commission was also established by the peace agreement and was charged with reviewing all large public financial commitments.

to finalize its winning bid into a contract. However, UTE never consummated a final contract with LTC. UTE sued ZTE, first in Liberia, and later in Dallas County district court, alleging ZTE's improper actions caused UTE to lose the UTE/LTC contract.

The Dallas lawsuit was filed in June 2010. UTE generally alleged ZTE interfered with its business relationships in Liberia and had improperly used UTE's confidential information. The parties executed a Rule 11 agreement in which they agreed to arbitrate their dispute. Specifically, the Rule 11 agreement also provided the case would be submitted to the "American Arbitration Association to be arbitrated in accordance with the terms of the parties' non-disclosure agreement . . . and the rules in force at the time of the application for arbitration."

Upon receipt of the arbitration demand, the AAA referred the matter to its international division (IDCR) under the applicable International Dispute Resolution Procedures (IDR Procedures). After an arbitrator was appointed, the matter proceeded and an arbitration hearing was held. Before the arbitrator issued his final ruling, however, the parties agreed to his removal. UTE then requested the IDCR appoint a three-arbitrator panel to re-hear the case. ZTE objected and the IDCR rejected UTE's request. Raul Gonzalez, former justice of the Texas Supreme Court and UTE's first choice for arbitrator, was appointed. After a two-week hearing, the arbitrator issued his final award denying all of UTE's claims against ZTE. Among other things, the arbitrator concluded UTE's causes of action were barred by limitations, that the project was a high risk business venture, that UTE's behavior was not the "but for cause" of UTE losing the LTC contract, and adverse inferences against ZTE were not warranted because UTE failed to prove ZTE acted with intent to conceal or intentionally destroyed evidence.

ZTE moved to confirm the award in the trial court, and UTE filed a cross-motion to vacate the award, or alternatively, conduct additional discovery based on "new revelations" involving ZTE's execution of a federal plea agreement nineteen days after the arbitrator issued the final

award in this case. The plea agreement involved charges of obstruction of justice, intentional destruction and manipulation of evidence, and lying under oath to federal authorities with respect to investigations of ZTE's sale of telecommunications and security equipment to Iran and North Korea in violation of sanctions imposed against those countries. UTE based its motion to vacate on the following grounds: (1) the AAA impermissibly denied the parties' agreed arbitrator selection method; (2) the arbitrator refused to draw an adverse inference from, or refused to consider, UTE's evidence that ZTE officers, employees, and witnesses were unavailable, concealed, or were uncooperative; (3) ZTE's federal plea agreement established the arbitration award in this case was obtained by corruption, fraud, or undue means, and (4) the arbitrator exceeded his jurisdiction in ruling UTE's claims were barred by limitations. Ultimately, the trial court denied ZTE's motion to confirm and granted UTE's motion without stating a reason, vacating the arbitration award and remanding the case to the AAA. ZTE filed this appeal.

## ANALYSIS

### A. Standard of Review

We review a trial court's ruling confirming or vacating an arbitration award de novo based on the entire record before us. *See Cambridge Legacy Grp., Inc. v. Jain*, 407 S.W.3d 443, 447 (Tex. App.—Dallas 2013, pet. denied). An arbitration award has the same force as a judgment of a court of last resort and is presumed valid and entitled to great deference. *Id.* Thus, we indulge all reasonable presumptions to uphold the arbitration award and no presumptions are indulged against it. *See CVN Group, Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002). A party seeking to vacate an arbitration award bears the burden of presenting a record that establishes its grounds for vacating the award. *Statewide Remodeling, Inc. v. Williams*, 244 S.W.3d 564, 568 (Tex. App.—Dallas 2008, no pet.).

Because Texas law strongly favors arbitration, judicial review of an award is extraordinarily narrow. *See Hoskins v. Hoskins*, 497 S.W.3d 490, 494 (Tex. 2016) (quoting *E. Tex. Salt Water Disposal Co. v. Werline*, 307 S.W.3d 267, 271 (Tex. 2010)). Under both the Texas Arbitration Act (TAA) and the Federal Arbitration Act (FAA), vacatur is limited to the grounds expressly provided by statute and there are no common-law grounds for vacating an arbitration award. *See Hall Street Assocs., L.L.C. v. Mattel, Inc*., 552 U.S. 576, 584 (2008) (FAA); *Hoskins*, 497 S.W.3d at 494 (TAA). Unless the arbitration award is vacated, modified, or corrected on a ground provided in the arbitration acts, the trial court must grant a party's motion to confirm an award. *See* 9 U.S.C. §9; TEX. CIV. PRAC. & REM. CODE ANN. § 171.087 (West 2011).

## B.      Arbitrator Selection Rights

In its first issue, ZTE asserts the trial court could not vacate the arbitration award based on UTE's contention that it was denied its arbitrator selection rights under the parties' agreement.[5] UTE argues the AAA "administrative diktat" transferring this case to the ICDR unilaterally changed the arbitrator selection process and prevented UTE from having a three-arbitrator panel pursuant to the AAA Commercial Rules as the parties agreed.[6]

Arbitrators have no independent source of jurisdiction aside from the parties' consent and must be selected pursuant to parties' agreement. *See Americo Life, Inc. v. Myer*, 440 S.W.3d 18, 21 (Tex. 2014). Here, the parties' arbitration agreement was contained in the NDA UTE signed with ZTE, USA. The arbitration agreement merely provided that "disputes shall be submitted to [the] American Arbitration Association in accordance with its rules in force at the time of

---

[5] In its motion to vacate, UTE asserted the selection of a single arbitrator pursuant to IDR Procedures violated subsection 10(a)(3) of the FAA and subsection 171.088(a)(3)(D) of the TAA which generally permit vacatur of an award where arbitrators engaged in misbehavior or conducted the hearing in a manner that substantially prejudiced a party's rights. *See* 9 U.S.C. § 10(a)(3); TEX. CIV. PRAC. & REM. CODE ANN. § 171.088(a)(3)(D).

[6] UTE argues that because the parties did not agree to the number of arbitrators, it was entitled to a three-member tribunal under the AAA Commercial Rules for large complex dispute involving damages in excess of $1 million.

application for arbitration." Moreover, after UTE sued ZTE Corporation (a Chinese Company) and its United States affiliate in Dallas County district court, the parties entered into a rule 11 agreement to submit the case to the AAA in accordance with the rules in force at the time of the arbitration application. The parties also agreed that ZTE Corporation's special appearance "shall be decided by the arbitrator."

On May 9, 2012 the parties received a letter from the ICDR, a division of the AAA, stating the matter would be administered under the IDR Procedures as amended and in effect as of June 1, 2009. There is no indication that UTE objected to ICDR administration or application of the IDR Procedures. Additionally, in an August 20, 2012 letter to the parties, the ICDR administrator confirmed the parties had agreed the arbitration would be heard by one arbitrator that the parties would mutually designate. It was not until March 2016, after the parties agreed to remove the first arbitrator from the case, that UTE first asked the ICDR administrator to resume the arbitration with a tribunal of three arbitrators.[7] ZTE objected. The case administrator denied UTE's request concluding the parties originally agreed to have the matter heard by one arbitrator and absent any new mutual agreement, the matter would proceed with a single arbitrator as previously agreed by the parties.

The AAA arbitrator rule for large complex commercial cases provides:

(a) Large, Complex Commercial Cases shall be heard and determined by either one or three arbitrators, as may be agreed upon by the parties. If the parties are unable to agree upon the number of arbitrators and a claim or counterclaim involves at least $1,000,000, then three arbitrator(s) shall hear and determine the case. If the parties are unable to agree on the number of arbitrators and each claim and counterclaim is less than $1,000,000, then one arbitrator shall hear and determine the case.

---

[7] UTE specifically argued, "While the recent arbitration was under the ICDR Rules, the decision to use those rules was unilaterally made by the AAA. As ZTE USA, Inc. is a New Jersey company and UTE is a Texas company, the use of the AAA Commercial Rules was expected. While UTE does not preclude use of the ICDR Rules due to the international aspects of the dispute, the use of the AAA Rules' definition where the ICDR Rules are silent is amply warranted in this matter. UTE's proposed constitution and qualifications of the new Tribunal will minimize the potential for any successful challenge to an Award."

American Arbitration Ass'n, Commerical Arbitration Rules and Mediation Procedures (Including Procedures for Large, Complex Commercial Disputes) L-2(a) (June1, 2009).

The ICDR, on the other hand, is the international division of the AAA and charged with the exclusive administration of all of the AAA's international matters. According to IDR Procedures, where the parties have provided for the arbitration of an international dispute by the AAA without designating particular rules, the arbitration shall take place in accordance with IDR Procedures in effect at the date of the arbitration commencement, subject to any written modifications adopted by the parties. Int'l Dispute Resolution Procedures International Arbitration Rules Art. 1 (1.) (June 1, 2009). Under IDR Procedures, the parties are free to adopt any mutually agreeable procedures for appointing arbitrators, including whether to have a sole arbitrator or a tribunal of three or more. *See id*., Arts. 5 and 6. The IDR Procedures provide that if the parties have not agreed on the number of arbitrators, one arbitrator shall be appointed unless the administrator determines in its discretion that three arbitrators are appropriate because of the large size, complexity or other circumstances of the case. *Id*. at Art. 5.

UTE's argument that it "expected" the AAA Commercial Rules to apply because the arbitration agreement was executed between two domestic companies, completely ignores the fact that UTE brought a Chinese company into a dispute that involved a contract that was to be performed in Liberia. Nothing in the arbitration agreement itself expressly indicated that the parties specifically agreed to be bound by the AAA Commercial Rules for the selection process or the number of arbitrators to hear the case. On the contrary, the record reveals the only agreement the parties had with respect to the selection and number of arbitrators was that the matter would be heard by one mutually selected arbitrator as evidenced by the ICDR administrator's August 20 letter. UTE sought to change the parties' agreement when it sought to empanel a three-arbitrator tribunal after the first arbitrator was removed. But ZTE did not agree to UTE's modifications and

the ICDR proceeded pursuant to the parties' original agreement.  Because the parties initially agreed to a one-arbitrator arbitration, UTE did not establish it was denied its proper arbitrator selection rights, and this ground will not support the trial court's order vacating the arbitration award.

In reaching our conclusion we necessarily reject UTE's reliance on *Americo Life* as inapposite.  There, the supreme court held that the party could not be bound by AAA rules requiring impartiality of arbitrators when that altered the express terms of the parties' agreement which allowed each party to select an arbitrator and did not require impartiality as an arbitrator qualification.  *Americo Life*, 440 S.W.3d at 24–25.  There is nothing in the record before us to suggest that the parties expressly agreed to a three-arbitrator tribunal or that the arbitration would be conducted pursuant to the AAA procedures for large complex commercial disputes.

### C.    Fraud and Undue Means

In its second issue, ZTE contends the trial court erred in vacating the award based on UTE's assertion that the award was obtained by fraud or undue means.[8]  *See* 9 U.S.C. § 10(a)(1); Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(1).  UTE claims the trial court properly vacated the award on this ground because ZTE engaged in immoral, illegal, or bad faith conduct during the arbitration through its obstructive and dishonest behavior and as further evidenced by the federal plea agreement and related documents it executed nineteen days *after* the issuance of the arbitrator's final award.  UTE contends ZTE's obstructive and dishonest behavior during the arbitration and ZTE's failure to disclose the criminal activity that was the subject of plea agreement "could have had the impact of preventing the arbitrator's proper evaluation of every aspect of ZTE's defenses and UTE's claims."  Specifically, it suggests that had ZTE disclosed its

---

[8] Both the FAA and TAA also authorize vacatur for an award procured by corruption.  *See* 9 U.S.C. § 10(a)(1); Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(1).  However, in its appellate brief UTE states there is no allegation of corruption by the arbitrator in this case and UTE instead "asserts and focuses upon 'fraud' and 'undue means.'"

negotiations with the government regarding the plea agreement and the nature of ZTE's misconduct in the federal case involving the sale of goods to Iran and North Korea, it would have influenced the arbitrator's assessment of ZTE's credibility and the need for drawing adverse inferences against ZTE during the arbitration with UTE.

"Undue means" has been defined as immoral, illegal or bad faith conduct." *See Las Palmas Med. Ctr. v. Moore*, 349 S.W.3d 57, 69 (Tex. App.—El Paso 2010, pet. denied); *A.G. Edwards & Sons. Inc. v. McCollough*, 967 F.2d 1401, 1403–04 (9th Cir. 1992). UTE acknowledges that a petitioner seeking to vacate an award procured by fraud or undue means must show the alleged misconduct was material to an issue in the arbitration. *See Odeon Capital Grp. LLC v. Van Alstyne*, 864 F.3d 191, 196–97 (2nd Cir. 2017).

After reviewing the record before us, we cannot conclude UTE met its burden to establish ZTE obtained its award based on conduct that was immoral, illegal, or in bad faith. The conduct that is the subject of the plea agreement, while involving ZTE high officials, was not related to the subject matter of the arbitration. In fact, UTE has failed to show that ZTE had any duty to disclose the plea deal negotiations of the unrelated matter. In any event, UTE acknowledges in its brief that despite evidence introduced at the arbitration that ZTE had actually bribed Liberian officials as part of its underlying claims, the arbitrator still found that there was no evidence that ZTE intentionally withheld or destroyed information. Importantly, the plea agreement and other documents on which UTE now relies likewise do not show that ZTE intentionally withheld or destroyed information pertaining to the transactions involved the arbitration.

As the party seeking to vacate the arbitration award, UTE had the burden to bring forth a complete record establishing its basis for vacation. *See Statewide Remodeling*, 244 S.W.3d at 568. Where, as here, there is no transcription or record of the arbitration hearing, UTE cannot establish the arbitration award was procured by immoral, illegal, or bad faith conduct. *See id.* Without a

record of what was presented to the arbitrator, it is impossible to determine whether the plea agreement and related documents would have been material to the arbitrator's determination. We therefore conclude that UTE failed to meet its burden to show the arbitration award should be vacated on the grounds of fraud or undue means.

In its third issue, ZTE argues that the trial court could not properly vacate the award based UTE's allegations of arbitrator misconduct. We agree. To constitute misconduct requiring vacation of an award, the act complained of must be more than an error of law and must so prejudice the rights of a party such that it denies the party a fundamentally fair hearing. *See Petrobras Am., Inc. v. Astra Oil Trading NV*, No. 01-11-00073-CV, 2012 WL 1068311, at *12 (Tex. App.—Houston [1st Dist.] March 29, 2012, no pet.) (mem. op.).

In the trial court and on appeal, UTE contends the arbitrator refused to consider relevant and material evidence and also refused to draw adverse inferences "from the lack of evidence ZTE asserted was so conveniently unavailable." UTE also asserts it presented evidence that documents and deposition testimony requested in discovery was not produced by, had been destroyed by or deliberately concealed by, ZTE. Again, with no record of the arbitration hearing proceedings before us, we do not know what evidence UTE presented to the arbitrator nor can we review the arbitrator's conduct in connection with this complaint. Because UTE has not brought forth a complete record of the arbitration hearing, it has not met its burden of proof with respect to this issue. *See Statewide Remodeling*, 244 S.W.3d at 568–69. Accordingly the trial court's order vacating the arbitration award cannot be upheld on this ground.

In its fourth issue, ZTE challenges UTE's assertion that vacatur of the award was proper because the arbitrator exceeded his powers when he determined that all of its claims were barred

–10–

by limitations.[9]  Generally, an arbitrator exceeds his powers when he decides matters not properly before him.  *See Ancor Holdings, LLC v. Peterson, Goldman & Villani, Inc.*, 294 S.W.3d 818, 829 (Tex. App.—Dallas 2009, no pet.).  UTE's argument under this issue is premised on the contention that the removed arbitrator's June 2014 ruling denying ZTE's motion for summary judgment on limitations was tantamount to a partial final award that was binding on the successor arbitrator because ZTE never sought to vacate the ruling.  UTE essentially equates the denial of the summary judgment motion based on limitations to an interim arbitration award that was subject to confirmation or vacation.  But UTE provides no authority and we have found none to support its position.  Instead, UTE relies primarily on *Yasuda Fire & Marine Insurance Co. of Europe, Ltd. v. Continental Casualty Co.*, 37 F.3d 345 (7th Cir. 1994), which found an interim arbitration order requiring a party to post a letter of credit as interim equitable relief constituted an award under the FAA that was subject to confirmation or vacation in the district court.  *Id*. at 348.  Unlike *Yasuda*, a denial of a summary judgment order is not interim equitable relief.  Under both federal and Texas law, orders denying motions for summary judgment are generally considered interlocutory orders that are not final until they are merged into a final judgment.  *See, e.g. Dewayne Rogers Logging, Inc. v. Propac Indus., Ltd*., 299 S.W.3d 374, 388 (Tex. App.—Tyler 2009, pet. denied); *see also Gibbs v. Lomas*, 755 F.3d 529, 536 (7th Cir. 2014) (district court's denial of summary judgment usually unappealable interlocultory order); *Black v. J.I. Case Co*., 22 F.3d 568, 570–71 (5th Cir. 1994) (interlocutory order denying summary judgment not appealable where final judgment adverse to movant is rendered after trial on merits).  Courts have inherent authority to change or modify any interlocutory order until the judgment becomes final.  *See Dewayne Rogers Logging*, 299 S.W.3d at 388; FED. R. CIV. P. 54(b).  Because UTE failed to show the arbitrator exceeded his

---

[9] UTE first raised this ground for vacation in its reply in support of its motion to vacate after ZTE alleged that even if the arbitrator had concluded ZTE willfully withheld or destroyed evidence, the outcome of the arbitration would not have changed because the arbitrator determined all of UTE's causes of action were barred by limitations.

powers by ruling that UTE's claims were barred by limitations, the final award could not have been vacated on this ground.

In its fifth issue, ZTE contends that because UTE failed to present sufficient grounds for vacating the arbitration award, the trial court erred in failing to confirm the award. We agree. As noted above, both FAA and the TAA provide that the trial court must confirm an arbitration award unless grounds are presented for vacating the award. Having concluded that none of the grounds presented by UTE are sufficient for vacating the arbitrator's award, the trial court erred in failing to confirm the award. *See Hamm v. Millennium Income Fund, L.L.C.*, 178 S.W.3d 256, 262 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (FAA and TAA require trial court to confirm arbitration award unless award is vacated, modified or corrected under statutes). Accordingly, we reverse the trial court's order and render judgment confirming the arbitration award.

## CONCLUSION

On the record of this case, we reverse the trial court's order vacating the arbitration award and render judgment confirming the award.

/David Evans/
DAVID EVANS
JUSTICE

170781F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ZTE CORPORATION AND ZTE USA, INC., Appellants

No. 05-17-00781-CV          V.

UNIVERSAL TELEPHONE EXCHANGE, INC., Appellee

On Appeal from the 44th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-10-07052
Opinion delivered by Justice Evans, Justices Myers and Brown participating.

In accordance with this Court's opinion of this date, the order of the trial court vacating the arbitrator's award is **REVERSED** and judgment is **RENDERED** that the arbitrator's final award entered in ICDR Case No. 50-20-1200-0342 on or about February 16, 2017 be, and hereby is, **CONFIRMED**.

It is **ORDERED** that appellants ZTE Corporation and ZTE USA, Inc. recover their costs of this appeal from appellee Universal Telephone Exchange, Inc.

Judgment entered this 19th day of November, 2018.